FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

2013 DEC -9  PM 12: 59

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

THERESA SCHOBER

     Plaintiff,

v.

TOWN OF FORT MYERS BEACH, FLORIDA
a Florida municipal corporation

     Defendant

_____/

CASE NO.:

2: 13 -CV- 857 -FtM-38UAM

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, THERESA SCHOBER ("MS. SCHOBER"), by and through her

undersigned attorney, hereby sues TOWN OF FORT MYERS BEACH, FLORIDA a

Florida municipal corporation (hereinafter referenced as "the Town"), and as grounds

therefore states as follows:

I.    *Preliminary Statement*

    1.    This action seek declaratory, injunctive and equitable relief, compensatory

damages, costs and attorney's fees for sex discrimination, discrimination as to religion,

retaliation and defamation suffered by the Plaintiff, MS. SCHOBER, including, but not

necessarily limited to direct reprisal by the Town toward MS. SCHOBER for reporting

discrimination directed at and involving her, in the course and scope of her employ, upon

her separation by and from Defendant, the Town, and thereafter.

II.    *Jurisdiction*

1

2.     This action arises under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and 28 USC Section 1343(4); Chapter 760, Florida Statutes, and the common law of the State of Florida as they relate to defamation, all as amended. The jurisdiction of this Court is invoked pursuant to 28 USC § 1343(4) and Chapter 760, Florida Statutes to secure protection and redress derivation of rights secured by federal and state law which prohibit discrimination against employees because of their sex, religion, and retaliation.

3.     Charges against Defendant alleging sex, religion, and retaliation were timely filed with the United States Equal Employment Opportunity Commission (EEOC), dual filed with the Florida Commission on Human Relations (FCHR), and more than 90 days have elapsed since the filing of these charges.

4.     A Right-to-Sue letter was issued by the United States Equal Employment Opportunity Commission (EEOC) to THERESA SCHOBER for EEOC Charge Number 15D-2013-00159, dated September 10, 2013, a true and accurate copy of which is attached hereto as Exhibit A, based upon charge affidavits timely filed with the EEOC and Florida Commission on Human Relations (FCHR.) The Plaintiff has exhausted all administrative remedies that are a prerequisite for filing this suit.

5.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC §2201, 2202 and Chapter 760, Florida Statutes.

2

6.      Costs and attorney's fees may be awarded pursuant to 29 USC § 626(b) and 29 USC § 216(b) incorporated herein, Fed R Civ P 54, Chapter 760, Florida Statutes and 448.104, Florida Statutes.

III. Venue

7.      This action properly lies in the United States District Court in the Middle District of Florida, pursuant to 28 USC § 1391(b) and 29 USC 1132(e)(2) Chapter 760, Florida Statutes, because the claims are a federal question, and/or are ancillary to a federal question, and because the claims arose in this judicial district.

IV.     *Parties*

8.      MS. SCHOBER is a lawful female resident of the United States and Lee County, Florida, and is for all times relevant in the instant complaint.

9.      The Town is a municipality within Lee County, Florida and an employer acting by and through its agents.

10.     MS. SCHOBER reported to work for the Town for all relevant periods referenced in the instant Complaint.

11.     Mr. Terrance Stewart, male, served as Fort Myers Beach's Town Manager for periods described herein, and had the authority, to hire, fire, demote, re-assign, discipline, and determine the rate of pay and other compensation for Fort Myers Beach employees for periods referenced herein.

12.     Mr. Stewart report to the Town Council of Fort Myers Beach, Florida for periods described herein, and served at their behest.

3

13.     Mr. Larry Kiker, Mayor, male, served as Fort Myers Beach's Mayor for all periods described herein, and oversaw the operations of the Town of Fort Myers Beach.

14.     Marilyn Miller, Esquire served as an attorney for the Town of Fort Myers beach, upon information and belief, on a Consultant basis, and performed services at the express direction and behest of Mr. Stewart, Fort Myers Beach Town Manager, for the applicable episodes referenced herein.

15.     Evelyn Wicks was the Town Finance Director, had Human Resources responsibilities for the Town and reported directly to Terrance Stewart for all purposes described herein.

V.     *Facts*

16.     MS. SCHOBER is female and an Archeologist by profession.

17.     MS. SCHOBER had nine (9) years' tenure with the Town, and her last position held was "Director of Cultural Resources."

18.     MS. SCHOBER is well qualified for all positions held with the Town, and her work performance met and at times even exceeded the Town's reasonable employment expectations.

19.     MS. SCHOBER was never subjected to discipline of any significance, formally or informally, during the course of her employment until the instances described herein.

20.     MS. SCHOBER worked with the Town as a Consultant initially, and was later

4

recruited for a formal employment position prior to Mr. Stewart serving as the Town Manager.

21.    Mr. Stewart, Town Manager, commenced his employment with the Town on or about February 2010 and *after* MS. SCHOBER's initial hire, and mistreated MS. SCHOBER upon the bases of her sex, female, and due to religion—Mr. Stewart is Christian and MS. SCHOBER is not—from the commencement of his employment.

22.    MS. SCHOBER had not interacted with Mr. Stewart long enough to have committed any workplace infraction, or to have offended him in any manner or regard.

23.    Mr. Stewart was the City Manager for the City of Cape Coral, Florida prior to his becoming Manager for the Town.

24.    Marilyn Miller is a private attorney with the Fowler White Law Firm, and performed legal work for the Town for certain periods described herein. Ms. Miller worked very closely with Mr. Stewart in his capacity as Fort Myers Beach Manager.

25.    Upon information and belief, Ms. Miller served as an employee in the position of Attorney for the City of Cape Coral, Florida prior to her employment with Fowler White et al., and reported to Mr. Stewart then in his capacity as Cape Coral, Florida City Manager during both of their tenures with the City of Cape Coral, Florida.

26.    MS. SCHOBER first met with Mr. Stewart on or about February 17, 2010, and he told her words to the effect "Larry Kiker [Mayor] told me to fire you. I am going to make up my own mind."

5

27.    MS. SCHOBER's employment history with the Town prior to Mr. Stewart's

employment was excellent.   Her disciplinary file was virtually devoid of any infraction.

She was not placed on a performance plan or "last chance" agreement.   She was

certainly not warned her continued employment was in jeopardy.

28.    MS. SCHOBER interpreted Mr. Stewart's remarks as discriminatory animus,

and as a threat.   MS. SCHOBER was led to understand that Mr. Stewart could not

terminate her employment lest he violate the Town Charter.

29.    MS. SCHOBER reported Mr. Stewart's discriminatory behavior referenced

in paragraph 28, above, to Evelyn Wicks.   Ms. Wicks took no remedial action, and stated

that if Mr. Stewart intended to fire her, he never would have invoked the Mayor's name.

30.    Upset, and concerned about discrimination in the Town workplace, and

about her continued employment, MS. SCHOBER resolved to continue performing her job

to the best of her ability, and hoped that Mr. Stewart would note her positive work

performance and curb his discriminatory behavior.   He did not.

31.    Instead, Mr. Stewart would make a point of remarking to MS. SCHOBER "I

can count to three"—meaning that he convinced three Town council members to support

his decision to terminate her.

32.    Mr. Stewart went out of his way to threaten MS. SCHOBER that she

purportedly lacked at least three Town Council members' votes of confidence.   MS.

SCHOBER interpreted Mr. Stewart's behavior as discrimination based upon her sex and

religion.   She was embarrassed and offended. She opposed the discriminatory practices,

6

to no avail.

33.     MS. SCHOBER's work environment became markedly tense and hostile.

34.     Mr. Stewart spoke to MS. SCHOBER in a patronizing and condescending fashion, referring to conversations with her as "daddy talks." MS. SCHOBER was embarrassed and offended, and opposed the behavior—but it continued.

35.     Mr. Stewart spoke publicly about being proud of his wife because although she was a career woman, she left the workforce when she became pregnant.

36.     Mr. Stewart also would speak in staff meetings about how beautiful he found pregnant women.   MS. SCHOBER interpreted these remarks as patently sexist, and was offended.

37.     More than once during private meetings with Mr. Stewart, he remarked about MS. SCHOBER not being Christian.   MS. SCHOBER was uncomfortable with the remarks, and offended.

38.     On one occasion and in MS. SCHOBER's presence, Mr. Stewart remarked to a visiting group that the Calusa tribe, whose artifacts and sites she maintained for the Town, were "Christians."   MS. SCHOBER was in the midst of performing her duties with this visiting group when Mr. Stewart made this statement, and she interjected that the Calusa were not religious in the traditional sense.   Mr. Stewart retorted angrily and publicly "You don't make fun of my religion, and I will not make fun of yours."

39.     More than once, Town employees told MS. SCHOBER that Mr. Stewart was retaliating against her and planned to fire her.

7

40.     On January 28, 2011, after subjecting MS. SCHOBER to various adverse employment effects and repeatedly demeaning her profession, as well as announcing more than once that the Town did not require an Archaeologist any longer—and would instead replace her position with a Parks Director, MS. SCHOBER was abruptly demoted, prompting her constructive discharge effective on August 31, 2011.

41.     Mr. Stewart told MS. SCHOBER that he would create a Parks and Recreation position and have another person occupy that position in her stead—but he did not disclose to MS. SCHOBER when this change would occur, or what the terms of her new position would be, if any.

42.     Mr. Stewart would say only that MS. SCHOBER'S position would change and that he would hire a new Parks and Recreation Director, but that it would not be MS. SCHOBER.

43.     Mr. Stewart did not speak to MS. SCHOBER again about her continued employment with the Town after announcing he would replace her with a Parks Director.

44.     After Mr. Stewart's announcement that he would replace MS. SCHOBER with a Parks Director, MS. SCHOBER's attempts to determine information concerning the nature of her continued employment, what she would be paid, the title she would hold, or the timing of the change in her position were to no avail.

45.     MS. SCHOBER monitored all public budget proposals and other related fiscal paperwork Mr. Stewart submitted to the Town Council in an effort to obtain information about the specific nature of the changes Mr. Stewart proposed to her position,

to no avail. Mr. Stewart did not include the new Parks and Recreation budget item in the proposal he submitted to the Town Council in June 2011—the normal time period proposed budgets are to be submitted.

46. Without warning, in August 2011, when no specific budget proposals were anticipated, MS. SCHOBER noticed a Parks and Recreation item was added to the budget and a 20% pay reduction was proposed for her post. Mr. Stewart did not speak to MS. SCHOBER about the pay reduction, or notify her he planned to submit the same at the time.

47. MS. SCHOBER spoke to Ms. Wicks, Human Resources, about the proposed pay reduction, and was told that Mr. Stewart spoke to Human Resources and enlisted Marilyn Miller's assistance to determine the amount by which they could lawfully reduce MS. SCHOBER'S pay. Ms. Wicks took no remedial action.

48. The Town had a requirement for any Director to afford the Town one month's advance notice of separation in order to receive all accrued and unused sick and vacation time accrued at the Director rate. This is the rate at which MS. SCHOBER's accrued sick and vacation time on account was earned as of August 2011.

49. MS. SCHOBER was compelled to give notice of separation to the Town on August 31, 2011 in an effort to receive all of her accrued and unused sick and vacation pay at the pay rate she had earned it.

50. Otherwise, MS. SCHOBER's accrued sick and vacation pay would have been paid to her by the Town at the rate of pay after her demotion. Mr. Stewart's decision

9

to propose a twenty percent pay reduction for MS. SCHOBER's position in August 2011 and without warning or notice was retaliatory, in bad faith, and designed to compel her to forfeit a significant portion of her accrued and unused sick and vacation pay.

51.     MS. SCHOBER recommended a longer period of time to effect a transition for the Town's Archaeological department—but Mr. Stewart's actions prevented this.

52.     MS. SCHOBER offered to Mr. Stewart, in writing, to devise and work through a transition plan for the Town's archaeology program, rather than simply leave abruptly with no transition plan in place and several projects in flux--and Mr. Stewart ignored her request.

53.     The citizen's group with whom MS. SCHOBER worked for nine years sponsored a proclamation recognizing MS. SCHOBER's good work and service to the Town.   The Town never formally adopted the same.

54.     MS. SCHOBER's departure passed without mention by the Town.

55.     After MS. SCHOBER's separation from the Town, she assisted a company who made an archaeological film for the Town with editing work that she was uniquely qualified to perform, at no cost to the Town and as a professional courtesy.   It came to MS. SCHOBER's attention that Mr. Stewart was repeating threats he intended to carry out against her in the event the Town received a bill for that project. Other similar threats by Mr. Stewart came to MS. SCHOBER's attention during this period.

56.     More than one year after MS. SCHOBER's separation, MS. SCHOBER received a letter from Ms. Miller, Esquire, on behalf of Mr. Stewart and the Town of Fort

10

Myers Beach, on Fowler White Law Firm letterhead dated September 21, 2012, alleging MS. SCHOBER hid archaeological items from the Town, and strongly implied, if not outright stated, that MS. SCHOBER stole archaeological items.

57.     The allegations were patently false.

58.     The Town is a public entity and many persons had access to the items in question during and after the time MS. SCHOBER left.

59.     Further, MS. SCHOBER reasonably concluded the Town was simply unfamiliar with the location of the items because they did not deem such knowledge important during or after MS. SCHOBER's tenure.

60.     On September 27, 2012, two Town staff members, Patti Evans, Parks and Recreation Director, and Regan McBride, MS. SCHOBER's Assistant with the Town for about 18 months prior to MS. SCHOBER's transfer to the Town's Youth Coordinator Position, took Ms. Miller's letter to a public meeting of The Cultural and Environmental Learning Center Advisory Board ("CELCAB.") Thereafter, CECCAB members falsely accused MS. SCHOBER of stealing/harming the Town's artifacts and archaeological sites.

61.     Ms. McBride and Ms. Evans worked with MS. SCHOBER for a time prior to MS. SCHOBER's departure. The Town knew or should have known that the statements they repeated concerning MS. SCHOBER were false, knew or should have known that the statements would place MS. SCHOBER in a poor light professionally, and knew or should have known that the statements would damage MS. SCHOBER—yet they repeated the allegations to a very wide audience.

62.     Ms. McBride and Ms. Evans reviewed the letter and attachments with members of the public, and accused MS. SCHOBER of misappropriating the artifacts listed and pictured in Marilyn Miller's letter and attachments.   MS. SCHOBER was disparaged at another public meeting, as well.

63.     Mr. Stewart then made a statement on October 15, 2012 at a public Town Council meeting that he was taking allegations concerning MS. SCHOBER to the Sherriff, strongly implying if not outright stating that MS. SCHOBER is guilty of theft.

64.     Mr. Stewart's allegations were ludicrous, and he knew or should have known the allegations were false.   For example, one artifact in question had been referred to the archaeological museum in Gainesville, Florida for restoration under Mr. Stewart's own signature during MS. SCHOBER's tenure.

65.     MS. SCHOBER opposed these practices as discriminatory, retaliatory and defamatory.

66.     MS. SCHOBER employed an attorney to direct correspondence on MS. SCHOBER's behalf to the Town and to Ms. Miller, opposing discriminatory practices.

67.     Neither Mr. Stewart nor the Town ever apologized—but Mr. Stewart did announce much later at a public meeting that the artifacts were found.

68.     MS. SCHOBER filed formal discriminatory practice allegations with the United States Equal Employment Opportunity Commission, dual filed with the Florida Commission on Human Relations.

69.     After MS. SCHOBER filed discrimination charges on November 13, 2012,

12

MS. SCHOBER was subjected to reprisal by Mr. Stewart and the Town.

70.    MS. SCHOBER received a telephone call from Sherriff's Detective TJ. Guitler, inquiring into whether MS. SCHOBER ever worked for the Town at an archaeological site known as the Mound House, and related questions regarding locating missing artifacts.

71.    MS. SCHOBER answered that she was formerly employed by the Town, and that more than a year following her departure from the Town, she received a letter from the Town's Attorney Marilyn Miller.   The letter contained a threatening tone indicating that artifacts were supposedly missing.

72.    The Town expected MS. SCHOBER to locate and/or provide a report concerning these items, on her own time and free of charge to the Town, with the implication that they would seek legal action against MS. SCHOBER in the event that she failed to cooperate.

73.    MS. SCHOBER was compelled to retain the services of a criminal attorney, at her own expense.

74.    Upon the advice of criminal counsel, MS. SCHOBER responded to the list of items the Town claimed were missing, point by point, in writing in a five page statement, and explained their last known whereabouts at the time of her final employment with the Town.

75.    MS. SCHOBER's criminal attorney provided this list to the Sherriff, who in turn, gave it to the Town.

76.    The Town and its agents continued to repeat false and negative reports concerning MS. SCHOBER at public meetings and in the local paper, and after they received this list from MS. SCHOBER.

77.    When the vase on loan to the historical museum was "found," the Town reported in the local paper only that the item was located, and took no steps to dispel the notion that MS. SCHOBER was responsible for the item's disappearance.

78.    MS. SCHOBER returned to independent contractor archaeology work after her departure from the Town's employ.

79.    Mr. Stewart and other Town employees continued to disparage her to third parties after MS. SCHOBER's departure--in a thinly veiled effort to ensure that MS. SCHOBER did not work elsewhere in the community.

80.    For example, the Town interfered with MS. SCHOBER's assignment to serve as an archaeological guide for a private tour group once they learned MS. SCHOBER was the selected guide.

81.    The Town publicly embarrassed MS. SCHOBER by advising the charter boat company and others that MS. SCHOBER was not permitted on the public site, and would have to lead the tour from the boat--interfering with an advantageous business relationship.

82.    Mr. Stewart advised MS. SCHOBER at least three times during her employ with words to the effect that he had no use for an archaeologist.

83.    Throughout the recent controversy, the Town advertised in the paper for an

14

archaeologist.

84.   The citizen's advisory board has recommended that MS. SCHOBER be hired to assist with the advertised and open archaeology post—but were ignored by the Town.

85.   The Town requested that archaeological professionals interested in the position submit their qualifications by November 21, 2012.

86.   However, Mr. Stewart had a Sherriff's report filed against MS. SCHOBER in November 2012, alleging that MS. SCHOBER stole Town artifacts, precluding her candidacy for employment with the Town.

87.   Mr. Stewart demanded MS. SCHOBER's assistance, but had no intention and did not compensate MS. SCHOBER for her time or expertise.

88.   When MS. SCHOBER would not agree to assist gratis, Mr. Stewart compelled MS. SCHOBER's response by force through the use of law enforcement.

89.   Finally, Mr. Stewart acknowledged that all of the allegedly "missing" items were found.

90.   Mr. Stewart further indicated that the staff had not inspected Town storage facilities or looked inside boxes in their own possession.

91.   Some of Mr. Stewart's acknowledgments occurred at a March 28, 2013 CELCAB (Cultural and Environmental Learning Center Advisory Board) meeting.

92.   Mr. Stewart and the Town's behavior is negligent and impugned MS. SCHOBER's professional reputation, damaging her.

93.    MS. SCHOBER has been retaliated against for opposing discriminatory practices.

94.    MS. SCHOBER has not been able to secure other employment in her field in the Fort Myers, Florida area and surrounding communities.

95.    MS. SCHOBER's rights have been violated and she has been damaged.

### COUNT ONE
### SEX DISCRIMINATION

96.    MS. SCHOBER incorporates as if re-alleged paragraphs 1-95.

97.    Because sex, female, was a motivating factor in the decision to construct to mistreat MS. SCHOBER during the course and scope of her employment and to disparage, malign, harass and then fire her, the Defendant and its agents violated Title VII of the Civil Rights Act of 1964, the Florida Human Rights Act, and the common law of the State of Florida, all as amended, with knowing and/or reckless disregard of the Act's proscriptions.

### COUNT TWO
### RELIGIOUS DISCRIMINATION

98.    MS. SCHOBER incorporates as if re-alleged paragraphs 1-95.

99.    Because religion was a motivating factor in the decision to construct to mistreat MS. SCHOBER during the course and scope of her employment and to disparage, malign, harass and then fire her, the Defendant and its agents violated Title VII of the Civil Rights Act of 1964, the Florida Human Rights Act, and the common law of the

16

State of Florida, all as amended, with knowing and/or reckless disregard of the Act's
proscriptions.

## COUNT THREE
## RETALIATION

100.   MS. SCHOBER incorporates as if re-alleged paragraphs 1-95.

101.   Because MS. SCHOBER opposed and reported sex discrimination and
religious discrimination directed toward her, including but not limited to reports of
retaliation she suffered post dismissal, and because MS. SCHOBER's retaliation reports
were at least a motivating factor and made a difference in her mistreatment at work, in her
termination, and in the mistreatment she continued to suffer after her separation from the
Town, the Town violated retaliation provisions in contravention of Title VII of the Civil
Rights Act of 1964, the Florida Human Rights Act, and the common law of the State of
Florida , all as amended.

## COUNT FOUR
## DEFAMATION

102.   MS. SCHOBER incorporates as if re-alleged paragraphs 1-95

103.   Because the Town published and republished false statements about MS.
SCHOBER to a very wide audience that the Town knew or should have known were false,
and that portrayed MS. SCHOBER in an unfavorable light, and that the falsity of the
statements caused injury to MS. SCHOBER and to her professional reputation, and
because MS. SCHOBER has been damaged, the Town and its agents defamed MS.
SCHOBER in contravention of the common law of the State of Florida.

## COUNT FIVE
## INTERFERENCE WITH AN ADVANTAGEOUS
## BUSINESS RELATIONSHIP

104.   The Plaintiff incorporates as if re-alleged paragraphs 1-95.

105.   The Plaintiff had a business relationship with in the Lee County, Florida community, including, but not limited to, with a charter company and with public archaeological groups such as CELCAB.

106.   The Defendants have and had knowledge of this relationship.

107.   The Defendants engaged in an intentional, and unjustified, interference with this relationship.

108.   The Plaintiff suffered and was damaged because of the interference.

**WHEREFORE,** Plaintiff prays that this court will:

a. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

b. Enjoin Defendants from engaging in such conduct;

c. Restore the Plaintiff to her rightful place archaeologist with the Town, or, in lieu of reinstatement, order Defendant to pay an award of damages to fully compensate Plaintiff for lost wages and other compensation to which she is entitled, including, but not necessarily limited to front salary and benefits for the period remaining until normal retirement;

d. Restore the Plaintiff to the position she would have occupied had none of the aforementioned harms occurred;

e. Order Defendants to pay prejudgment interest on all sums due;

f. Order Defendants to pay compensatory damages allowable at law;

g. Order Defendants to pay an award of attorney's fees and costs (including expert fees, if any) under Section 448.104, Florida Statutes; and

18

h. Grant such further relief as the Court deems just, necessary and proper.

VI.          *Prayer for Relief*

WHEREFORE, Plaintiff respectfully requests this Court to issue an Order awarding damages owed to THERESA SCHOBER, including reinstatement, or in lieu of reinstatement, back pay, front pay, compensatory damages, punitive damages, if any, as well as an award of any liquidated damages to which she may be entitled pursuant to 29 U.S.C. §216(b), legal fees and costs, including, but not necessarily limited to an award of a reasonable attorneys fees and costs pursuant to 29 U.S.C. §216(b), and awarding all such other relief as the Court deems just and appropriate.

Respectfully submitted,

GERALYN F. NOONAN, ESQUIRE
Florida Bar Number: 968020
*Attorney for Plaintiff*
Post Office Box 07338
Fort Myers, Florida 33919
239-694-7070 telephone
239-481-0993 facsimile

19