UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THERESA SCHOBER,

        Plaintiff,

v.                                  Case No: 2:13-cv-857-FtM-38CM

TOWN OF FORT MYERS BEACH,
FLORIDA, a Florida municipal
corporation,

        Defendant.
_____/

### ORDER[1]

This matter is before the Court on Defendant Town of Fort Myers Beach, Florida's Motion to Dismiss Amended Complaint with Prejudice (Doc. #25) filed on August 18, 2014. Plaintiff Teresa Schober filed an Opposition to Defendant's Motion to Dismiss (Doc. #26) on September 2, 2014. Thus, the motion is ripe for review.

### BACKGROUND[2]

#### A. Plaintiff's employment with Defendant

Plaintiff worked for Defendant for approximately nine years, serving its archeological interests. (Doc. #9 at ¶¶ 22-23). She started as a consultant, but Defendant

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] At the motion to dismiss stage, the Court must "accept as true the factual allegations" set forth in Plaintiff's Amended Complaint. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); see also Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006). The facts as recited in this Order, however, may not be the facts later proven.

eventually hired her full time and promoted her to Director of Cultural Resources. (Id. at ¶ 26).  During her tenure, Plaintiff exceeded Defendant's performance expectations and was never disciplined.  (Id. at ¶¶ 24-25).

Plaintiff's work environment changed in February 2010 when Terrance Stewart became Defendant's Town Manager.  (Id. at ¶ 27).  When Plaintiff met Stewart on or about February 17, 2010, he allegedly told her that she would no longer oversee Defendant's historical properties and would be assigned public works responsibilities.  (Id. at ¶ 32).  At the same meeting, Stewart told Plaintiff that the mayor told him to fire her, but that he was "going to make up [his] own mind."  (Id.).  Plaintiff interpreted Stewart's remarks to be discriminatory and threatening.  (Doc. #9 at ¶ 34).  She reported Stewart's remarks to Evelyn Wicks, Defendant's Finance Director who also held human resources responsibilities.  (Id. at ¶ 35).  Wicks took no remedial action.  (Id.).

Plaintiff thereafter resolved to perform to the best of her ability in hopes that her performance would curb Stewart's alleged discriminatory behavior.  (Id. at ¶ 36).  Stewart did not respond as Plaintiff had hoped.  (Id. at ¶ 36).  He allegedly threatened Plaintiff by suggesting he had convinced three council members to support his decision to fire her.  (Id. at ¶¶ 37-38).  Stewart also allegedly spoke to Plaintiff in a patronizing and condescending fashion, referring to conversations with her as "daddy talks."  (Doc. #9 at ¶ 40).  In Plaintiff's presence, Stewart stated that he was proud of his wife for leaving the workforce when she became pregnant and that he found pregnant women to be beautiful.  (Id. at ¶¶ 41-42).

Stewart further commented on Plaintiff's non-Christian religious affiliation.  (Id. at ¶ 43).  For instance, he told a group of tourists that the Calusa Indian tribe was "Christian."

(Id.). Plaintiff corrected Stewart, stating the Calusa tribe was not religious in the traditional sense. (Id.). Stewart allegedly retorted, "[y]ou don't make fun of my religion, and I will not make fun of yours." (Id. at ¶ 44).

On January 28, 2011, Stewart advised Plaintiff that he was replacing her position with a newly created Parks and Recreation position and that she would not fill the new job. (Doc. #9 at ¶¶ 46-47). At that time, Stewart told her neither when she would be replaced nor what position, if any, she would fill. (Id. at ¶ 47). Plaintiff unsuccessfully inquired about when she would change positions and her future job title. (Id. at ¶¶ 50-51).

In June 2011, Stewart submitted a formal budget proposal. (Id. at ¶ 51). The proposal did not include the new Parks and Recreation position previously noted. (Id.). On or about August 11, 2011, however, Plaintiff learned that the Parks and Recreation position was added to the budget proposal and a twenty percent (20%) pay reduction was proposed for her post. (Id. at ¶ 52). Stewart neither discussed the proposed pay reduction with Plaintiff nor notified her that he was submitting the proposal. (Doc. #9 at ¶ 52).

According to Plaintiff, Stewart purposely did not tell her about the pay cut because of Defendant's policy on collecting accrued and unused leave upon separation of employment. (Id. at ¶¶ 54-56). At the time in question, Defendant required department directors, like Plaintiff, to give one month's advance notice of separation in order to receive any accrued and unused leave at the director pay rate. (Id. at ¶ 54). For Plaintiff to receive her accrued and unused leave at the director pay rate, she resigned on August 31, 2011. (Id. at ¶¶ 54-56).

**B. Plaintiff's alleged theft of Defendant's archaeological items**

On September 21, 2012, Marilyn Miller, Esq., Defendant's attorney, wrote a letter to Plaintiff that "strongly implied, if not outright stated," she had stolen archaeological items from Defendant.  (Id. at ¶ 62).  This letter arrived more than one year after Plaintiff left Defendant's employ.

On September 27, 2012, the Cultural and Environmental Learning Center Advisory Board ("CELCAB") held a public meeting. (Id. at ¶ 66).  Patti Evans, Defendant's Parks and Recreation Director, and Regan McBride, Plaintiff's former assistant, read and distributed the letter at the meeting.  (Doc. #9 at ¶¶ 66-68).  Evans and McBride also accused Plaintiff of stealing and misappropriating certain artifacts Defendant owned.  (Id. at ¶ 68).

At some unknown time, Defendant allegedly disparaged Plaintiff to the Florida Archaeology Network and to Annette Snapp, an archaeologist consultant whom Defendant hired to help with a flooded archeological site called the Mound House.  (Id. at ¶ 69).  According to Plaintiff, Defendant told Snapp that Plaintiff was responsible for the Mound House's disaster preparedness, which was untrue.  (Id.).

On October 15, 2012, Stewart stated at a public meeting that he was going to report Plaintiff's alleged theft to the Sheriff.  (Id. at ¶ 71).  Sometime thereafter, Plaintiff received a telephone call from Detective TJ Guitler.  (Id. at ¶ 78).  He asked Plaintiff questions about Defendant's allegedly missing artifacts.  (Doc. #9 at ¶ 78).  Plaintiff responded that she used to work for Defendant and discussed the September 21, 2012 letter.  (Id. at ¶ 79).

According to Plaintiff, Defendant expected her to help locate the missing artifacts on her own time and free of charge. (Id. at ¶ 80). Because Defendant allegedly threatened her with a legal action if she did not cooperate, Plaintiff hired an attorney. (Id. at ¶¶ 80-81). Upon her attorney's advice, she wrote a five-page statement to Defendant, detailing her last known whereabouts of the missing artifacts. (Id. at ¶¶ 82-83). Despite Plaintiff's cooperation, Defendant allegedly continued to repeat false and negative reports about Plaintiff at public meetings and in the local newspaper. (Id. at ¶ 84).

In the end, Defendant found the allegedly missing artifacts, and Stewart acknowledged so at a CELCAB meeting on March 28, 2013. (Doc. #9 at ¶¶ 75, 85, 97, 99). However, neither Stewart nor Defendant apologized to Plaintiff for the false accusations. (Id. at ¶ 75).

## C. Defendant's alleged interference with Plaintiff's business relationships

After Plaintiff resigned in August 2011, she worked as an independent contractor. (Id. at ¶ 86). Stewart and other employees of Defendant allegedly disparaged her to third parties in an effort to ensure that she did not work in the community. (Id. at ¶ 87). For instance, Defendant allegedly interfered with Plaintiff's assignment to serve as an archaeological guide for a private boat tour group once it learned she was the selected guide. (Id. at ¶ 88). Defendant advised the tour company that she was not permitted on the public site and would have to lead the tour from the boat. (Id. at ¶ 89).

## D. Plaintiff's charge of discrimination

On or about November 13, 2012, Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR"), which, in turn, was dual filed with the

5

United States Equal Employment Opportunity Commission ("EEOC"). (Doc. #9 at ¶¶ 76-77; Doc. #25-1).³ On July 25, 2013, the FCHR found no reasonable cause that Defendant committed an unlawful employment practice. (Doc. #25-2). The EEOC adopted the FCHR's no-cause finding and notified Plaintiff of her right to sue in federal or state court. (Doc. #1-1).

Plaintiff timely commenced this action on December 9, 2013. (Doc. #1). She alleges Defendant discriminated against her based on her sex (female) and religion (non-Christian) and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Human Rights Act ("FHRA"). (Doc. #9). She also contends that Defendant defamed her and interfered with an advantageous business relationship in violation of Florida law. (Id.). Defendant now moves to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. #25).

## **STANDARD OF REVIEW**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the [p]laintiff's [c]omplaint to determine whether it sets forth sufficient allegations to establish a claim for relief." House v. Bankers Ins. Co., 43 F. Supp. 2d 1329, 1330 (M.D. Fla. 1999). The Supreme Court has stated, "[t]o survive a motion to dismiss, a [c]omplaint must contain

---

³ To support its Motion to Dismiss, Defendant attached Plaintiff's FCHR Charge of Discrimination (Doc. #25-1) and the FCHR's Determination letter (Doc. #25-2). Although not attached to the Complaint, the Court may still consider the FCHR documents without converting the instant Motion to Dismiss (Doc. #25) into a motion for summary judgment. Under the incorporation by reference doctrine, a court may "consider a document attached to the pleadings or to a motion to dismiss without converting a Rule 12(b)(6) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged." Hearn v. Int'l Bus. Machines, No. 8:13-CV-827-T-30EAJ, 2013 WL 5499610, at *3 (M.D. Fla. Oct. 1, 2013) (citing Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002)). Here, the FCHR documents are central to Plaintiff's claims because they are a condition precedent to this suit, and the parties do not dispute their authenticity. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Accordingly, the Court will consider the FCHR documents when deciding Defendant's Motion to Dismiss.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims. Id. at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims. See id. Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. See id. Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments. See Twombly, 550 U.S. at 555. Moreover, the plaintiff does not have to show a likelihood of success; rather, the complaint must merely allege - directly or indirectly - each element of a "viable legal theory." Id. at 562-63.

## DISCUSSION

**A. Discrimination and retaliation claims (Counts One to Three)**

Defendant moves to dismiss the Title VII and FCRA discrimination and retaliation counts on the following grounds: (1) the Title VII claims are time-barred under the 300-day statutory period to bring an administrative charge of discrimination; and (2) Plaintiff's failure to follow Florida's administrative review scheme after the FCHR issued the no-

7

cause determination bars the FCRA claims. (Doc. #25 at 1-2). The Court will address each argument in turn.

    1. Title VII

Before commencing a Title VII action in federal court, a plaintiff in a deferral state like Florida must file an administrative charge of discrimination within 300 days of the last discriminatory act. See 42 U.S.C. § 2000e-5; E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002). Alternatively, a plaintiff may file an administrative complaint with the FCHR within 365 days after the purported discriminatory act. See Fla. Stat. § 760.11(1). Either way, a plaintiff cannot recover for discrete acts of discrimination and retaliation that occur outside the applicable statutory period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113. Discrete acts "are easy to identify" and include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114.

The continuing violation doctrine offers an exception to this limitation period and allows a plaintiff to sue on otherwise time-barred claims where at least one violation occurred within the period. See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001). "In determining whether a discriminatory employment practice constitutes a continuing violation, '[the court]' must distinguish between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." Joe's Stone Crabs, 296 F.3d at 1271 (citation omitted). "[A] plaintiff may not circumvent the limitations period

merely by labeling an act a 'continuing' violation.  Completed acts such as a termination . . . are not acts of a 'continuing' nature.  Rather, a plaintiff must maintain that a pattern of discrimination or an employment practice presently exists to perpetuate the alleged wrong."  Jacobs v. Bd. of Regents, 473 F. Supp. 663, 669 (S.D. Fla. 1979) (citation and internal quotation marks omitted).  The continuing violation "doctrine does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire."  Brooks v. CSX Transp., Inc., No. 13-12048, 2014 WL 480382, at *2 (11th Cir. Feb. 7, 2014) (citing Morgan, 536 U.S. at 114).

Here, Plaintiff filed her discrimination charge on November 16, 2012.[4]  (Doc. #25-1 at 1).  Consequently, all discrete discriminatory and retaliatory acts that occurred before January 21, 2012, for Title VII purposes, and November 17, 2011, for FCHR purposes are not actionable and outside the scope of this case.  This means, for example, that Plaintiff's allegations that Defendant demoted her on January 28, 2011, and constructively discharge her on August 31, 2011, are untimely.  See Joe's Stone Crabs, 296 F.3d at 1271; Thompson v. Orange Lake Country Club, Inc., 224 F. Supp. 2d 1368, 1374 (M.D. Fla. 2002) ("The timely filing of a charge of discrimination is a prerequisite to bringing a private suit under Title VII." (citations omitted)).

As best the Court can discern, Plaintiff turns to the continuing violation doctrine to salvage the otherwise untimely Title VII claims.  She argues Defendant engaged in

---

[4] In opposing the instant Motion to Dismiss, Plaintiff states she filed her discrimination charge on September 10, 2012. (Doc. #26 at 6). Plaintiff's statement is cause for concern. She signed and dated the FCHR discrimination charge on November 13, 2012, and the FCHR date stamped the charge as received on November 16, 2012. (Doc. #25-1). She also represents in the Amended Complaint that she "filed discrimination charge on November 13, 2012." (Doc. #9 at ¶ 77). As such, the Court trusts that the September 10, 2012 date is a typographical error, and not a calculated effort to mask the Title VII claims' patent untimeliness.

9

several retaliatory acts in 2012 that occurred 300 days after she filed the discrimination charge. (Doc. #26 at 11-12). Such acts include (1) Defendant accusing Plaintiff of stealing archaeological items in the September 21, 2012 letter; (2) the letter being read at the public meeting on September 27, 2012; and (3) Stewart announcing at the public meeting on October 15, 2012, that he was reporting Plaintiff's alleged theft to the Sheriff. (Id.). Plaintiff's argument misses twice. First, the alleged retaliatory acts occurred in 2012, more than one year after Plaintiff ended her employment relationship with Defendant. Plaintiff simply ignores the obvious requirement that one must have an employment relationship with the accused to maintain claims of workplace discrimination. Second, Plaintiff cannot dodge the 300-day limitations period by merely stating the continuing violation doctrine "allows a plaintiff like Ms. Schober to sue on otherwise time-barred claims where at least one violation occurred within the time period." (Id. at 12). She does not claim, as required, that Defendant engaged in a pattern of retaliation or had an employment practice that perpetuated the alleged wrong. See Jacobs, 473 F. Supp. at 669. She needs more than "some specificity" that this a continuing violation case in order to rescue her otherwise time-barred discriminatory or retaliatory allegations. (Doc. #26 at 13).

Moreover, Plaintiff avers that under 42 U.S.C. § 2000e-5(g), she "may recover monetary damages for adverse employment effects suffered retroactively up to and including two years prior to the date her charge was filed." (Doc. #26 at 13). Plaintiff's reliance on 42 U.S.C. § 2000e-5(g)(1) is woefully inadequate and misplaced. Under § 2000e-5(g)(1), a court may order a successful Title VII plaintiff to be reinstated with or without back pay; and any "[b]ack pay liability shall not accrue from a date more than two

years prior to the filing of a charge with the [EEOC]." 42 U.S.C. § 2000e-5(g)(1). The Court is aware of no precedent, and Plaintiff points to none in her papers, in which § 2000e-5(g)(1)'s back pay recovery language allows for a retroactive application of the 300-day limitations period discussed above. Simply put, the Court can make no reasonable sense of Plaintiff's argument.

For the reasons explained above, the Court dismisses the Title VII claims with prejudice.

2. FCRA

Next, Defendant moves to dismiss Plaintiff's FCRA claims because she failed to pursue an administrative appeal after the FCHR issued its no-cause determination. (Doc. #25 at 3-5). To maintain a civil action under the FCRA, a plaintiff must first file an administrative complaint with the FHR within 365 days of the alleged violation. See Fla. Stat. § 760.11(1). If the FCHR makes a "no cause determination," a claimant must request an administrative hearing within thirty-five (35) days. See Fla. Stat. § 760.11(7). A claimant's failure "to request an administrative hearing within 35 days of the 'no cause' determination bars the complainant from bringing a civil suit for discrimination or retaliation under the FCRA." Miller v. Fla. Hosp. Waterman, No. 5:13-cv-249, 2013 WL 5566063, at *3 (M.D. Fla. Oct. 8, 2013) (citations omitted); see also Woodham v. Blue Cross and Blue Shield of Fla., Inc., 829 So.2d 891, 895 (Fla. 2002) ("[T]he FCRA differs from Title VII, its federal counterpart, in that a 'no cause' determination precludes a civil suit under the FCRA but not under Title VII.").

Here, the FCHR issued its no-cause determination on July 13, 2013, and Plaintiff did not request an administrative hearing within thirty-five (35) days as required. (Doc.

#25-2). Since Plaintiff did not pursue her only avenue of relief, the FCHR's no cause determination stands and she is barred from bringing the FCRA claims in this action. See Fla. Stat. § 760.11(7) (stating if a claimant "does not request an administrative hearing within the 35 days, the claim will be barred"); Ayers v. Wal–Mart Stores, Inc., 941 F. Supp. 1163, 1167 (M.D. Fla. 1996) ("[F]ailure to pursue administrative remedies after a 'no reasonable cause' dismissal by the FCHR bars any court action for relief.").  Thus, the Court dismisses the FCRA claims with prejudice.

In conclusion, the Court grants Defendant's Motion to Dismiss (Doc. #25) with prejudice as to Plaintiff's sex discrimination (Count One), religious discrimination (Count Two), and retaliation (Count Three) claims.

**B.     Defamation and tortious interference with an advantageous business relationship (Counts Four and Five)**

Next, Defendant argues the Court should dismiss the state law claims for defamation (Count Four) and tortious interference with an advantageous business relationship (Count Five) because it is absolutely immune from such claims under Florida law. (Doc. #25 at 5).

In Florida, "executive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office[.]" McNayr v. Kelly, 184 So.2d 428, 433 (Fla. 1966).  The privilege attaches to all statements "however false or malicious or badly motivated the statement may be."  Hauser v. Urchisin, 231 So.2d 6, 8 (Fla. 1970).  Pertinent here, "[i]f a city official has absolute immunity against claims for defamation, then the city cannot be liable for defamation where the liability against the City is premised on respondeat superior."  Medina v. City of Hialeah, No. 02-20957-CIV, 2003 WL 1562281, at *2 (S.D.

Fla. Mar. 24, 2003) (citation omitted); see also Murphy v. City of Aventura, No. 08-20603-CIV, 2008 WL 4540055, at *5 n.3 (S.D. Fla. Oct. 10, 2008) (stating the city would not be liable for defamation if the defendant city manager was found to possess absolute immunity (citation omitted)); Saxon v. Knowles, 185 So.2d 194, 196 (Fla. 4th DCA 1966) ("The alleged liability of the city is based solely on the doctrine of respondeat superior. Exoneration of the city manager necessarily requires the exoneration of his employer, the City of Sanford." (citation omitted)).

Defendant declares, without explanation, that it enjoys an absolute privilege to the defamation claim under the above principles. (Doc. #25 at 5). Defendant, however, overlooks the basic principle that *executive officials* enjoy the absolute privilege. See e.g., City of Miami v. Wardlow, 403 So.2d 414, 416 (Fla. 1981) (finding that a police officer enjoyed an absolute privilege in making slanderous statements about plaintiff to a police captain in another city); Densmore v. City of Boca Raton, 368 So.2d 945, 948 (Fla. 4th DCA 1979) (finding a city manager enjoyed an absolute privilege in disclosing his reasons for discharging the plaintiff). This oversight is important because Plaintiff sues only Defendant, a municipal corporation, rather than an executive official. As it stands, Defendant's absolute privilege hinges on whether the executive official who allegedly defamed Plaintiff acted within the orbit of his employment duties and responsibilities. Defendant offers no argument on this point, and the Court declines to devise arguments on its behalf.

Adding confusion to the matter, Plaintiff wholly mistakes Defendant's absolute privilege argument. Instead of arguing that Defendant has no absolute privilege under McNayr and its progeny, she contends that Defendant has no sovereign immunity from

13

vicarious liability for its employee's tortious acts under Florida Statute § 768.28(9)(a).[5] Plaintiff's contention is grossly misplaced as Defendant does not move to dismiss the tort claims under § 768.28(9)(a).  Plaintiff's mistaken reading of Defendant's argument is further problematic because a municipality's immunity under § 768.28(9)(a) is separate and distinct from its absolute privilege under McNayr.  In short, Plaintiff inexplicably misses the mark in responding to Defendant's arguments.

Finally, the subpar briefing with respect to the tort claims has greatly frustrated the Court's analysis.  Defendant simply declared that it is absolutely immune from liability for defamation and tortious interference without offering meaningful analysis and application to the facts as alleged.  Indeed, Defendant failed to cite a single case standing for this blanket proposition.  Plaintiff's argument, in turn, was completely non-responsive.  For reasons unknown, Plaintiff also went to great lengths to argue she sufficiently pled plausible facts to establish Defendant's liability and that the Amended Complaint complies with Rule 8 of the Federal Rules of Civil Procedure.  This effort was unnecessary (and undoubtedly wasteful) in the face of Defendant's decision to move to dismiss on procedural grounds.

Because the Court cannot decide on the face of the Amended Complaint and the parties' arguments whether the tort claims (Counts Three and Four) can in fact proceed, the Court requests supplemental briefing on the following issues: (1) whether the

---

[5] Generally, Florida law permits a plaintiff to recover against a municipality for the tortious acts of its employees based on a theory of vicarious liability.  See Fla. Stat. § 768.28 (governing the State of Florida and its subdivision's waiver of sovereign immunity from tort liability); Laster v. City of Tampa Police Dep't, 575 F. App'x 869, 872 (11th Cir. 2014) (citations omitted).  To prevail on a theory of vicarious liability against a municipality under Florida Statute § 768.28, a plaintiff must show liability on the part of the municipality's employee.  See Laster, 575 F. App'x at 873.  A municipality, however, is not liable for an employee's act or omission committed with a malicious purpose.  See Fla. Stat. § 768.28(9)(a).

executive official(s) who allegedly defamed Plaintiff are acted in connection with the official's employment duties and responsibilities such that Defendant enjoys absolute privilege under McNayr and its progeny where; and (2) whether Defendant is immune under Florida Statute § 768.28.

Accordingly, it is now

**ORDERED:**

(1) Defendant Town of Fort Myers Beach, Florida's Motion to Dismiss Amended Complaint with Prejudice (Doc. #25) is **GRANTED in part and DENIED in part**.

   a. Counts One, Two, and Three of the Amended Complaint are **DISMISSED with prejudice**.

   b. As to Counts Four and Five, Defendant is **DIRECTED** to submit a supplemental brief of no more than five (5) pages on the issues noted above on or before **December 1, 2014**. Plaintiff may file a response on or before **December 8, 2014** of no more than five (5) pages.

**DONE** and **ORDERED** in Fort Myers, Florida on this 17th day of November, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record